## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

American Alliance for Equal Rights,    :
           :
         Plaintiff,    :
           :
         v.       :  Civ. No. _____
           :
Jopwell, Inc.,    :
           :
         Defendant.    :
           :

## COMPLAINT

The American Alliance for Equal Rights brings this action against Jopwell, Inc. under the Civil Rights Act of 1866, 42 U.S.C. §1981. The Alliance seeks declaratory and injunctive relief.

1.      "[R]acial discrimination is invidious in all contexts." *SFFA v. Harvard*, 600 U.S. 181, 214 (2023) (cleaned up). The Reconstruction Congress understood this when it passed the Civil Rights Act of 1866, which "prohibit[s] any racial discrimination in the making and enforcement of contracts against whites as well as nonwhites." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 288 (1976). Better known as §1981, this statute guarantees all Americans the "same right" to contract, 42 U.S.C. §1981(a), protecting the "equal right of all persons" to "'make and enforce contracts' without respect to race," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. §1981(a)).

2.      Jopwell is flouting §1981, inking contracts with some races but not others. Jopwell is a recruitment and networking platform that connects students and professionals

with potential employers. In exchange for access to Jopwell's resources—including application assistance, networking opportunities, and referrals—candidates must agree to the company's Terms of Use; hand over personal information; grant Jopwell a license to content the candidates "post, upload, share, store, or otherwise provide through" the platform; and more. *Terms of Use* (archived Oct. 14, 2024), perma.cc/3HCB-WF24.

3.    Jobseekers are invited to use Jopwell's services only if they belong to one of a few specific racial groups. The company "exclusively supports Black, Latinx and Native American talent." *Partner With Us* (archived Oct. 14, 2024), perma.cc/P594-6QLG. Applicants with different skin colors, like Asian and white candidates, are not invited. To ensure they know this, Jopwell asks candidates to disclose their ethnicity when they create a profile on the company's website. If they choose white or Asian, they are directed to a different site.

4.    This rank discrimination was never lawful. But if Jopwell needed a reminder, the Supreme Court has reaffirmed that "[e]liminating racial discrimination means eliminating all of it." *Harvard*, 600 U.S. at 206. No racial discrimination is benign: It always "demeans the dignity and worth" of every American "to be judged" by his ethnicity instead of by his "own merit and essential qualities." *Id.* at 220.

5.    The Alliance has members who are excluded from Jopwell's services because they are the wrong race. The Alliance is entitled to relief.

**PARTIES**

6.    Plaintiff the American Alliance for Equal Rights is a nationwide membership organization dedicated to ending racial and ethnic preferences nationwide. The Alliance

was founded in 2021, and it was approved by the IRS as a 501(c)(3) tax-exempt organization the same year. The Alliance has hundreds of members, and its membership continues to grow.

7.      The Alliance's members are actively involved in the organization and its affairs. Members voluntarily join the Alliance. They pay dues. They receive updates. And they offer input on the Alliance's litigation and other activities.

8.      The Alliance's members include college students ready and able to register on Jopwell's website and make use of its services in their search for internships and post-graduate employment.

9.      Defendant Jopwell is a recruiting platform that "represent[s] and advance[s] careers for Black, Latinx, and Native American students and professionals." *About Jopwell* (archived Oct. 14, 2024), perma.cc/4Y7E-KWAV. Jopwell helps job candidates secure internships and permanent employment at partner companies, including some of the most prestigious companies like American Express, BlackRock, Google, and Johnson & Johnson. *Jopwell is Joining True Platform* (archived Oct. 14, 2024), perma.cc/2JCZ-ZXMP. It also provides networking and mentorship opportunities for its users.

10.     Jopwell is incorporated in Delaware.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this case "aris[es] under the … laws … of the United States." 28 U.S.C. §1331.

12.     Venue is proper under 28 U.S.C. §1391 because Jopwell "resides" in Delaware and a substantial part of the events giving rise to these claims occurred in Delaware.

## STATEMENT OF FACTS

**I.  Jopwell operates a racially exclusive recruiting and networking platform.**

13.  Jopwell is a "career platform" that helps university students and profession-als find employment at top-tier companies. *Frequently Asked Questions – About Jopwell* (archived Oct. 14, 2024), perma.cc/H3GS-N7BY. To join, users must be at least 18 years old and either have graduated from or be enrolled in a four-year college degree program. *Frequently Asked Questions – Joining Jopwell* (archived Oct. 14, 2024), perma.cc/J9AW-CJ22.

14.  Job candidates who join the platform have access to a variety of helpful re-sources. For example, after a candidate makes a profile on the company's website, Jopwell's algorithms will match the candidate with potential employers, and Jopwell's ac-count managers will offer personalized job recommendations that align with the candi-date's professional goals. *Frequently Asked Questions – About Jopwell* (archived Oct. 14, 2024), perma.cc/H3GS-N7BY. Jopwell also provides the candidate with information about a potential employer's "culture and core values." *Id.* And if a candidate chooses to submit an application, Jopwell will act as a "personal referral" to "help [the candidate] get to the finish line." *Id.* Users also have access to Jopwell's community events and premium con-tent on its digital career-advice magazine, The Well. *Id.*

15.  Jopwell's reach is considerable: it has 130,000 members, *Jopwell is Joining True Platform* (archived Oct. 14, 2024), perma.cc/2JCZ-ZXMP, and it has "facilitated tens of thousands of connections to possible employers." Melia Robinson and Zoe Bernard, *30*

*AND UNDER: These are the rising stars in tech who are driving innovation*, Business Insider, June 15, 2018, http://bit.ly/3Y8ucMo.

16.     Unfortunately, Jopwell does not give everyone equal access to its services. When deciding which candidates to work with, Jopwell discriminates based on race.

17.     On the home page of its website, the company explains that it "represent[s] and advance[s] careers for Black, Latinx, and Native American students and profession-als." *Jopwell.com* (archived Oct. 14, 2024), perma.cc/JW7P-9PVF In its words, Jopwell "exclusively supports" jobseekers from those racial groups, *Partner With Us* (archived Oct. 14, 2024), perma.cc/P594-6QLG, and its platform is "designed specifically" to assist them, *Frequently Asked Questions – About Jopwell* (archived Oct. 14, 2024), perma.cc/H3GS-N7BY.

18.     Other pages on the company's website confirm Jopwell's racial exclusivity. The first question on Jopwell's FAQ page, for example, asks who is eligible to join the platform. The answer: "Black, Latinx, and Native American students and professionals." *Frequently Asked Questions – Joining Jopwell* (archived Oct. 14, 2024), perma.cc/J9AW-CJ22. Candidates of other races, like white or Asian professionals, are not eligible.

19.     The registration process on Jopwell's website confirms the company's racial barrier. To start, the registration page stresses that Jopwell is a "community" specifically for "Black, Latinx, and Native American students and professionals." *Join the Jopwell Community* (archived Oct. 14, 2024), perma.cc/5QGS-KMVU. And candidates must an-swer a prompt requesting their "race/ethnicity" if they wish to create a profile. *Id.*

20.    If a candidate selects "Black/African descent," "Latinx/Hispanic," or "Native American" on the registration page, they are welcomed with a prompt stating that Jopwell has "a community that supports the professional journeys for folks who identify as Black, Latinx, and Native American!" *Id.* Clicking the subsequent "Apply here" link takes the candidate to a separate page where they can complete the profile creation process, "access job opportunities," and "connect and learn from other members." *Id.*

21.    But if a candidate selects "Asian," "Middle Eastern/North African," "Native Hawaiian or Pacific Islander," or "White"; indicates that their race is "Not listed"; or "Prefer[s] not to say"; then they are given a different prompt. *Id.* They are not offered a community that will support them on their professional journey. Instead, they are encouraged to "support the professional journeys" of *other* candidates—"Black, Latinx, and Native Americans"—as an "ally advisor." *Id.* Clicking "Apply here" takes them to a separate page that, again, asks them to "[s]upport the professional journeys of … Black, Latinx, and Native Americans" and informs them that, as an ally advisor, they will not "have access" to "the entirety of the Jopwell platform." *Id.*

22.    Jopwell's Terms of Use, which every candidate must agree to before creating a profile, *id.*, requires candidates to "provide [Jopwell] with accurate, complete, and updated registration information about" themselves, *Terms of Use* (archived Oct. 14, 2024), perma.cc/3HCB-WF24, including their race. The Terms also prohibit users from "misrepresenting" themselves or presenting "false" information about their identity on the platform. *Id.*

6

23.    Jopwell also promises racial exclusivity to its "partner companies," the hundreds of businesses and organizations that use Jopwell's platform to recruit employees. On its website, Jopwell posts a wide array of job openings at its partner companies. *Jobs* (archived Oct. 14, 2024), perma.cc/37TA-PGBR. But rather than invite candidates of every race to apply, Jopwell makes it clear that these opportunities are only for certain races. For example, Jopwell promises to establish a "pipeline" for partner companies to selectively hire "candidates from ethnic minority backgrounds." *Jopwell Facebook Page* (archived Oct. 14, 2024), perma.cc/42DF-NEYP. Indeed, Jopwell's founders created the platform specifically to "matc[h] people of color (namely black, Latinx, and Native American) with great jobs and internships." Business Insider, *supra*, http://bit.ly/3Y8ucMo. By the company's own count, 74% of members joined the platform precisely "because it exclusively supports Black, Latinx, and Native American talent." *Partner With Us* (archived Oct. 14, 2024), perma.cc/P594-6QLG.

## II.    Jopwell creates binding contracts with its users.

24.    Before candidates can register for Jopwell, they "must agree to and accept" the company's Terms of Use. *Terms of Use* (archived Oct. 14, 2024), perma.cc/3HCB-WF24. Jopwell regards the Terms of Use as "a binding contract between [the candidate] and Jopwell." *Id.*

25.    Under Jopwell's Terms, when someone registers for the platform, they give up certain rights and accept certain obligations.

26.    First, users agree to Jopwell's Privacy Policy, which is incorporated into the Terms of Use. *Privacy Policy* (archived Oct. 14, 2024), perma.cc/YNQ2-L2EU. Under that

policy, users allow Jopwell to "collect, use, and share" their personal information. *Id.* That includes a user's identifying information (including name, race, gender identity, and address), contact information (including email address and phone number), and educational and employment history (including salary history and expectations). *Id.* It also includes information about the user's internet activity, like their IP address, geolocation data, and device information. *Id.* The user agrees to let Jopwell use this information to "improve" and "personalize" its services through "research, analysis, and product development." *Id.* Jopwell can also share the information with, among others, third-party advertising and analytics services. *Id.*

27.     Second, users grant Jopwell a license to "[a]nything [they] post, upload, share, store, or otherwise provide through" Jopwell's platform. *Terms of Use* (archived Oct. 14, 2024), perma.cc/3HCB-WF24. Jopwell is entitled to reproduce, display, and modify that content to make it "accessible" to the user himself and to other Jopwell users. *Id.* In addition, if users submit "feedback" to Jopwell or contribute content to The Well (Jopwell's digital career-advice magazine), Jopwell has a license to "reproduce" those submissions "for any purpose." *Id.* These licenses are "royalty-free, perpetual, sublicensable, irrevocable, and worldwide." *Id.*

28.     Third, users agree to several restrictions on how they can use Jopwell's services. *Id.* For example, they can "only use the Services for [their] own internal, personal use" and "not on behalf of or for the benefit of any third party." *Id.* They cannot "monito[r]"

Jopwell's services for "competitive purposes." *Id.* And they cannot "copy, reproduce, modify, transmit, … sell, commercialize, or otherwise exploit for any purpose" the content on the website. *Id.*

29.    Fourth, users agree to insulate Jopwell from liability. Users specifically agree that Jopwell is not liable for "any errors or omissions" in the information posted by third parties on Jopwell's website, any harm suffered by the user as a result of their interaction with "any third party website or service," or any dispute with "other users." *Id.* Users also agree to a broader liability waiver: "Under no circumstances and under no legal theory (including, without limitation, tort, contract, strict liability, or otherwise) shall Jopwell (or its licensors or suppliers) be liable to [the user] or to any other person for … any indirect, special, incidental, or consequential damages of any kind." *Id.* That includes "lost profits, loss of goodwill, work stoppage, accuracy of results, or computer failure or malfunction." *Id.* Jopwell is also immune for "any matter beyond [its] reasonable control." In any event, Jopwell's liability is capped at "the greater of (I) $100 or (II) the amounts paid by [the user] to Jopwell" in the preceding six-month period. *Id.*

30.    Finally, users must forfeit important legal protections. They must agree to a "choice of law" clause. *Id.* And unless users opt out, they waive the right to a jury or bench trial for "[a]ny dispute arising out of or relating to" the Terms of Use. *Id.* They also waive the right to participate in a class action or class arbitration against Jopwell. *Id.* Instead, any dispute "shall be finally settled by binding [individual] arbitration." *Id.* These arbitration requirements also cover users' claims against Jopwell's officers, directors, employees, and independent contractors. *Id.*

31.    Jopwell's users get valuable consideration in return.

32.    First, in exchange for agreeing to the Terms of Use, job candidates are entitled to use Jopwell's website and other services. That includes "dedicated resources, personalized career opportunities, community events, and content through [Jopwell's] digital magazine." *Frequently Asked Questions – About Jopwell* (archived Oct. 14, 2024), perma.cc/H3GS-N7BY. Users also can "directly connect with … hiring managers at [Jopwell's] partner companies." *Id.* And they can interact with other "members and advisors" through Jopwell's "Collective Community." *Terms of Use* (archived Oct. 14, 2024), perma.cc/3HCB-WF24.

33.    Additionally, Jopwell's users are entitled to the benefit of the arbitration and choice-of-law clauses in the Terms of Use. *Id.* Like its users, Jopwell also "waiv[es] the right to trial by jury and the right to participate in a class action" and agrees that the Terms will be construed according to certain law. *Id.* Jopwell also promises to pay all arbitration fees for claims less than $75,000. *Id.*

## III.    Jopwell's discrimination harms the Alliance's members.

34.    The Alliance has members who are being harmed by Jopwell's racial discrimination, including Member A.

35.    Member A pays dues to the Alliance, believes in the Alliance's mission, and supports this lawsuit.

36.    Member A is ready and able to create a profile on Jopwell's website and to use the company's services in his employment search. But Member A is not black, Latinx, or Native American. He is white and Asian and therefore not eligible for the key Jopwell

services. If he were eligible, he would sign up immediately, as his search for internships and future job opportunities is underway now.

37.     Member A meets all of Jopwell's nonracial criteria: he is over the age of 18 and currently enrolled at an accredited college in the United States pursuing a bachelor's degree.

38.     Member A is studying political science and began his third year of college in September 2024. He has already completed two internships during college, and he is actively seeking an internship for the summer of 2025. He is also searching for permanent employment after he graduates. Member A is open to many fields of work, including national security, public policy, and journalism.

39.     Member A wants the services and resources that Jopwell provides. He wants to use Jopwell's recruiting platform because it offers insight into companies' cultures and values to help jobseekers find compatible employers. He also likes that Jopwell will act as a referral for his job applications—an unusual advantage not offered by similar platforms. Member A would also enjoy the many networking and mentorship opportunities that Jopwell provides and would like to participate in Jopwell's community events with other students and professionals.

40.     Member A is willing to consider many different job and internship opportunities and many different kinds of employers. He is interested in pursuing employment at many of Jopwell's partner companies, like Google, Deloitte, or one of the multiple major financial institutions that appear on Jopwell's platform. He is willing to relocate to any

location within the United States for the right job, and he is open to remote positions as well.

41.     Unfortunately, when Member A visited Jopwell's website in the fall of 2024, he was informed that Jopwell was not interested in helping him because of his race. When he first arrived at the website, he was greeted with a message informing him that Jopwell "represent[s] … Black, Latinx, and Native American students and professionals." *Jopwell.com* (archived Oct. 14, 2024), perma.cc/JW7P-9PVF. But Member A is not any of those races; he is white and Asian.

42.     Then, on Jopwell's profile creation page—which asks users to disclose their race—Member A identified himself as white and Asian. A message appeared telling him, again, that Jopwell is a community for "Black, Latinx, and Native Americans." *Join the Jopwell Community* (archived Oct. 14, 2024), perma.cc/5QGS-KMVU. The message told him to instead register as "an ally advisor" to support people in *those* racial groups who are searching for a job, rather than his own job hunt. *Id.* By contrast, Member A checked and saw that, if he had listed his race as black, Latinx, or Native American, a different message would appear telling him that Jopwell "ha[s] a community that supports [his] professional journe[y]." *Id.*

43.     Member A did not complete the registration process or agree to Jopwell's terms. He can't because he is not black, Latinx, or Native American.

44.     Even if Member A could have registered, Jopwell's discriminatory operations would have ensured that he continued to suffer discrimination. Jopwell's discriminatory practices ensure that the applicants on its platform are black, Hispanic, and Native

American. Most employers use Jopwell *because* they want applicants from those racial groups. So even if Jopwell made an exception for Member A, he would face a massive disadvantage in getting hired. In fact, he would be seen as taking attention and opportunities away from the black, Hispanic, and Native American applicants on Jopwell.

45.    Member A finds Jopwell's discrimination against him discouraging and offensive. He is disappointed and concerned that his race is disadvantaging his ability to find quality internships and gainful postgraduate employment.

46.    Although Jopwell turned away Member A because he is not one of its preferred races, Member A would use Jopwell's services in the future if a court ordered Jopwell to end its discrimination. Member A is ready to apply for internships, and to seek permanent employment, through Jopwell's website. He continues to satisfy Jopwell's non-racial requirements. And he remains willing to accept Jopwell's Terms of Use.

47.    Member A is currently pseudonymous because he fears that, if his participation in this litigation becomes public, he will face reprisal based on his opposition to race-based recruiting and hiring. He fears that recruiting services (including Jopwell if the Alliance wins this case) will be unwilling to work with him and that potential employers will be unwilling to hire him. Additionally, Member A is in college, and many on his campus, including professors and university administrators, strongly reject his opposition to race-based recruiting and hiring. Member A would face hostility, threats, and other retaliation if his participation in this litigation were made public.

13

### CAUSE OF ACTION
### Violation of the Civil Rights Act of 1866
### 42 U.S.C. §1981

48.    The Alliance repeats and realleges each of its prior allegations.

49.    Jopwell is violating §1981 by intentionally excluding certain candidates from contractual relationships because of their race. Section 1981 guarantees "[a]ll persons ... the same right ... to make and enforce contracts," 42 U.S.C. §1981(a), prohibiting "discrimination in the making or enforcement of contracts against, or in favor of, any race," *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (cleaned up).

50.    Section 1981 covers private parties like Jopwell. The Act applies to governmental and "nongovernmental" actors, 42 U.S.C. §1981(c), "provid[ing] a cause of action for public or private discrimination based on race," *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986); *accord Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975); *Croker v. Boeing Co. (Vertol Div.)*, 662 F.2d 975, 988 (3d Cir. 1981). Section 1981 authorizes "both equitable and legal relief." *Johnson*, 421 U.S. at 460.

51.    Member A falls within §1981's ambit. Its "broad terms" bar discrimination "against, or in favor of, any race." *McDonald*, 427 U.S. at 295. Titled "Equal rights under the law," §1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 208 (2019), by protecting the "equal right of all persons ... to make and enforce contracts without respect to race," *Domino's*, 546 U.S. at 474 (cleaned up). As the Third Circuit has held, §1981 protects *all* individuals, of every race, "who have been victims of racial discrimination" in the making of contracts. *Al-Khazraji v. St. Francis Coll.*, 784 F.2d 505, 515 (3d Cir. 1986).

14

52.    Jopwell forms binding contracts with the users of its platform. For purposes of §1981, "a contract is 'an agreement to do, or refrain from doing, a particular thing, upon sufficient consideration.'" *AAER v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 775 (11th Cir. 2024); *see also Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) ("In drafting §1981, Congress ... intended the term 'contract' to have its ordinary meaning."). Jopwell's relationship with its users fits that definition. When candidates create a profile on Jopwell's website, they agree to Jopwell's Terms of Use, which constitute "a binding contract." *Terms of Use* (archived Oct. 14, 2024), perma.cc/3HCB-WF24. Under those Terms, the candidate must give Jopwell their data, grant Jopwell certain licenses, restrict their use of the platform to approved purposes, immunize Jopwell from almost all liability, and agree to resolve all disputes through individual arbitration. In return, Jopwell agrees to the same arbitration requirements and gives the candidate access to many valuable resources like personalized job recommendations, application referrals, and networking opportunities. "By any measure, that is a bargained-for exchange supported by good and sufficient consideration." *Fearless Fund*, 103 F.4th at 775.

53.    Jopwell's racially exclusive practices implicates a right that §1981 protects: the right to "*make* ... contracts." 42 U.S.C. §1981(a) (emphasis added). "[A] contractual relationship need not already exist" to trigger §1981; the law "protects the would-be contractor along with those who already have made contracts." *Domino's*, 546 U.S. at 476. So businesses like Jopwell are liable "under §1981 when, for racially motivated reasons, they prevented individuals who 'sought to enter into contractual relationships' from doing so." *Id.* (emphasis omitted) (quoting *Runyon v. McCrary*, 427 U.S. 160, 172 (1976)). That's

what happened here: Jopwell prevented Member A from registering on its platform—which would create a "contractual relationshi[p]" with Jopwell—so it is liable under §1981. *Id*.

54.     Jopwell's discrimination is intentional. "[P]roof of a facially discriminatory ... policy"—or even "a corporate decision maker's express[ed] desire to avoid" contracting with members of a certain race—is "direct evidence of discriminatory intent." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (cleaned up). Here there's both. Jopwell "facially discriminat[es]" against job candidates who are not black, Latinx, or Native American. *Id.* And Jopwell's "corporate decision maker[s]" have repeatedly expressed a "desire to avoid" contracting with students and professionals who do not fit those racial categories. *Id.* Jopwell's founders started the company to "matc[h] people of color (namely black, Latinx, and Native American) with great jobs." Business Insider, *supra*, http://bit.ly/3Y8ucMo. Jopwell's website says its "mission" is to "advance careers for Black, Latinx, and Native American students and professionals." *About Jopwell* (archived Oct. 14, 2024), perma.cc/4Y7E-KWAV. In its own words, Jopwell "exclusively supports Black, Latinx and Native American talent *Partner With Us* (archived Oct. 14, 2024), perma.cc/P594-6QLG. So the Alliance "is not required to make any further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014).

55.     Jopwell's discrimination cannot survive strict scrutiny. "[A]ll racial classifications ... must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). To satisfy that demanding test, Jopwell

must "prove that the reasons for any racial classification are clearly identified and unquestionably legitimate." *Fischer v. Univ. of Tex. at Austin*, 570 U.S. 297, 310 (2013) (cleaned up). But any interest Jopwell might have in discriminating among applicants based on race is plainly illegitimate. Title VII of the Civil Rights Act of 1964, which prohibits "all discrimination in employment," *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 259 (1981), makes it unlawful for a recruiting platform to "refer" or "fail or refuse to refer for employment … any individual because of his race," 42 U.S.C. §2000e-2(b). It also prohibits recruiters from "publish[ing] any notice or advertisement relating to employment … indicating any preference, limitation, specification, or discrimination, based on race." §2000e-3(b). That language admits of no exceptions.

56.    Nor is Jopwell's practice narrowly tailored. The company imposes "an absolute bar" against candidates who do not belong to one of its preferred races. *Fearless Fund*, 103 F.4th at 776-77 & n.5. And categorically excluding entire racial groups—everyone who is not black, Latino, or Native American—is quintessentially illegal. *Id.*

### PRAYER FOR RELIEF

57.    The Alliance respectfully asks this Court to enter judgment in its favor and against Jopwell and grant the following relief:

A.    A declaratory judgment that Jopwell is violating 42 U.S.C. §1981.

B.    A permanent injunction barring Jopwell from limiting access to its services based on race, inquiring about users' race, or from indicating any racial preference.

C.    Reasonable costs and expenses of this action, including attorneys' fees, under

42 U.S.C. §1988 and any other applicable laws.

D.    All such further relief that the Court deems just and proper.

Dated: October 15, 2024                    Respectfully submitted,

**CONSOVOY MCCARTHY PLLC**          **OFFIT KURMAN, P.A.**

Thomas R. McCarthy*                        _/s/ Anthony Delcollo_
Cameron T. Norris*                         Anthony Delcollo (DE# 5688)
R. Gabriel Anderson*                       Thomas H. Kramer (DE# 6171)
Paul R. Draper*                            Michael K. DeSantis (DE# 4847)
1600 Wilson Blvd, Suite 700                Roopa Sabesan (DE# 5951)
Arlington, VA 22209                        222 Delaware Avenue, Suite 1105
Telephone: (703) 243-9423                  Wilmington, DE 19801
tom@consovoymccarthy.com                   Telephone: (302) 351-0900
cam@consovoymccarthy.com                   adelcollo@offitkurman.com
gabe@consovoymccarthy.com                  tom.kramer@offitkurman.com
paul@consovoymccarthy.com                  michael.desantis@offitkurman.com
                                           roopa.sabesan@offitkurman.com

* _Pro hac vice applications forthcoming_

                                           _Counsel for Plaintiff_